UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**LAQUINTA TUCKER,** individually,
and on behalf of others similarly situated,

        Plaintiffs,

vs.

**SNEAKER VILLA, INC.,**
d/b/a RU VILLA,
a Delaware corporation

        Defendant.

Case No.

Hon.

_____

## COLLECTIVE AND CLASS ACTION COMPLAINT
## WITH JURY DEMAND

Plaintiff, Laquinta Tucker, individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective and Class Action Complaint against Defendant, Sneaker Villa, Inc. (hereinafter referred to as "Sneaker Villa" or "Defendant"), and states as follows:

## INTRODUCTION

1. This is a collective action brought pursuant to 29 U.S.C. § 216(b) by Plaintiff, Laquinta Tucker (hereinafter referred to as "Plaintiff"), individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

2. Defendant employed Plaintiff as an hourly "Key Holder" (retail store clerk) in several of their urban clothing stores. Commencing in March 2017, and ending in September 2017, Plaintiff has worked beyond 40 hours during numerous separate workweeks.

3. Defendant was obligated by the FLSA to compensate Plaintiff for work performed beyond 40 hours in each given workweek at a rate one and one-half times Plaintiff's normal hourly rate.

4. Defendant was aware of its obligation to compensate Plaintiff for work performed beyond 40 hours in a workweek during the relevant time period at one and one-half times Plaintiff's regularly hourly rate. Defendant nevertheless failed and refused to pay Plaintiff for work performed beyond 40 hours in each given workweek during the relevant time frame at a rate one and one-half times Plaintiff's normal hourly rate. Defendant's conduct in that regard amounts to a willful violation of the overtime provisions of the FLSA.

5. Furthermore, not only did Defendant fail to pay Plaintiff overtime premiums, Defendant maintained a policy and practice wherein they refused to pay Plaintiff and those similarly situated to her *anything* for hours worked over 40 hours in a single workweek.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim

pursuant to 28 U.S.C. § 1331 because it raises a federal question under 29 U.S.C. § 201, *et seq*.

7. Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

8. This Court has personal jurisdiction over Defendant because Defendant, at all relevant times, conducted and continues to conduct business within the State of Michigan.

9. Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's Key Holders engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

10. This Court has jurisdiction over Plaintiff's state law claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and this is a case in which more than two-thirds of the proposed Class members are citizens of different states.

11. A private party may also bring an action for damages for unjust enrichment under the common law. Plaintiff's unjust enrichment claims originate from the same facts that form the basis of their federal claims. Thus, the Court has supplemental jurisdiction over Plaintiff's unjust enrichment claims pursuant to 28 U.S.C. §1367.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts business in this district, employs Plaintiff and many similarly situated individuals in this district, and a substantial portion of the events giving rise to Plaintiff's claims occurred in this district.

## PARTIES

13. Plaintiff is a resident of Pontiac, Michigan, and was employed by Defendant as an hourly Key Holder from approximately March 2017 to September 2017. Plaintiff signed a consent form to join this lawsuit, which is attached to this Complaint as ***Exhibit A***.

14. Additional Opt-In Plaintiffs were or are still employed by Defendant as Key Holders during the past three years and their consent forms will also be filed in this case.

15. Defendant is a Delaware corporation with its headquarters and principal offices located at 1926 Arch St, Philadelphia, Pennsylvania 19103.

16. Defendant is registered to do business in the State of Michigan and its registered office in Michigan is located at 601 Abbot Road, East Lansing, MI 48823. The registered agent is listed as CSC-Lawyers Incorporating Service (Company).

17. According to Defendant's Website, they are "one of the country's most successful emerging urban lifestyle retailers with 120 stores in 10 states." *See* https://www.ruvilla.com/company-history/ (last visited 12/6/17).

## GENERAL ALLEGATIONS

18. Upon information and belief, at hire, Key Holders are paid an hourly rate of $10.00 to $12.00 per hour.

19. Plaintiff was paid at an hourly rate of $11.40 per hour. *See* Plaintiff's paystubs, which are attached to this Complaint as ***Exhibit B***.

20. Plaintiff performed duties as a store clerk for Defendant and was given the job title of "Full-time Key Holder."

21. The position description for a Key Holder provides the following principal duties and responsibilities:

- Demonstrates leadership, customer service, and customer retention skills by building personal working relationships with customers and the community.
- Stays up to date with the latest urban shoe/apparel fashion trends.
- Maintains an awareness of all product information, merchandise promotions and shoe releases.
- Ensures that each guest receives outstanding guest service by providing a customer focused environment, including greeting and acknowledging every guest, maintaining outstanding standards, solid product knowledge and all other components of guest service.
- Assists with shipments, restocks, and price changes.

- Helps customers locate merchandise or find suitable alternatives.
- Assists with loss prevention strategies to eliminate both employee and customer theft.
- Maintains store cleanliness by performing cleaning duties as directed by store management.
- Ensuring that fitting rooms are ready for customers by promptly clearing our merchandise and returning it to the proper area of the selling floor.
- Adhere to all company policies, procedures and standards including employee conduct performance, dress policy attendance and customer relations.
- Performs other duties as assigned by Store Management.

22. Over the past three years, Defendant has employed hundreds (if not thousands) of Key Managers at its 120 different retail stores.

23. Upon information and belief, Defendant classifies all of its Key Managers as non-exempt employees for purposes of the FLSA.

24. On many occasions, Plaintiff and other similarly situated Key Managers were required to work more than 40 hours in a single workweek.

25. Although Plaintiff and other similarly situated Key Managers were required to work more than 40 hours in a single work week, Defendant maintained a company-wide policy of refusing to pay Key Managers overtime premiums as required by the FLSA.

26. Specifically, Defendant's management was trained, instructed, and/or pressured to alter Key Managers' timecards to reflect no more than 40 hours per workweek.

27. Plaintiff was advised on several occasions by management that her timecards would be adjusted down to 40 hours.

28. For example, on August 1, 2017 Defendant's District Manager for Michigan demanded that Plaintiff's timecard be adjusted down from 40.6 hours to 40 hours. ***Exhibit C***, 8-1-17 Email from District Manager.

29. Again, on August 21, 2017, the District Manager for Michigan again demanded that Plaintiff's timecard be adjusted down from 40.3 hours to 40 hours. ***Exhibit D***, 8-21-17 Email from District Manager.

30. Plaintiff often worked over 40 hours in a single work week; however, her paystubs were reduced to show only 40 hours worked. ***Exhibit B***, Plaintiff's Paystubs.

31. Defendant's policy and practice of altering Key Holder's timecards was a companywide policy and practice.

## COLLECTIVE ACTION ALLEGATIONS

32. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of themselves and on behalf of:

> *All current and former hourly Key Holders who worked for Sneaker Villa full time at any time in the past three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

7

33. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

34. Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

35. Consistent with Defendant's policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all premium overtime compensation when they worked beyond 40 hours in a workweek.

36. All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

37. As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

- Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek;

- Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for other off-the-clock work; and

- Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, have worked for the

   benefit of Defendant;

- Altering the timecards of employees, including Plaintiff and the members of the FLSA Collective, when they have performed over forty (40) hours of work in a workweek.

38. Defendant is aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members an overtime premium for all hours worked in excess of forty (40) per workweek.

39. Defendant's unlawful conduct was widespread, repeated, and consistent.

40. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

41. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the alteration of timecards, off-the-clock work, and nonpayment of overtime premiums – does not vary substantially among the proposed FLSA Collective members.

42. There are many similarly situated current and former Key Holders who were underpaid in violation of the FLSA. They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

43. Plaintiff estimates the FLSA Collective, including both current and former Key Holders over the relevant period, includes hundreds, if not thousands of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

44. Plaintiff Tucker brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former hourly Key Holders who worked for Sneaker Villa at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff Tucker reserves the right to amend this definition if necessary.

45. The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff Tucker reasonably estimates there are hundreds, if not thousands, of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

46. There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

    a. Whether the time spent by the Rule 23 Nationwide Class that exceeded forty (40) hours in a workweek should have been paid at the FLSA overtime premium rate;

    b. Whether the Defendant made lawful reductions to the Rule 23 Nationwide Class members' timecards; and

    c. Whether Defendant's non-payment of wages for all compensable time unjustly enriched Defendant.

47. Plaintiff Tucker's claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff Tucker's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

48. Plaintiff Tucker will fully and adequately protect the interests of the Rule 23 Nationwide Class and she retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither

Tucker nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

49. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

50. This case will be manageable as a Rule 23 Class action. Plaintiff Tucker and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

51. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

52. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I

### (29 U.S.C. § 216(b) Collective Action)

**VIOLATION OF THE FAIR LABOR STANDARDS ACT,
29 U.S.C. § 201, et seq. – FAILURE TO PAY OVERTIME**

53.   Plaintiff re-alleges and incorporates all paragraphs herein.

54.   At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

55.   At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

56.   At all times relevant to this action, Plaintiff and the FLSA Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

57.   Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

58.   Plaintiff and the FLSA Collective members either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

59.   At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

60. At all times relevant to this action, Defendant required Plaintiff and all the proposed FLSA Collective members to perform off-the-clock work, and Defendant failed to pay these employees the federally mandated overtime compensation for all work performed.

61. The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

62. In workweeks where Plaintiff and other FLSA Collective members worked 40 hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable. 29 U.S.C. § 207.

63. Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have paid Key Holders for their off-the-clock work. Further, Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for these work activities, but did not.

64. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages),

plus costs and reasonable attorneys' fees.

## COUNT II
### (Rule 23 Nationwide Class Action)

### **UNJUST ENRICHMENT**

65.     Plaintiff Tucker re-alleges and incorporates all paragraphs herein and further allege as follows.

66.     At all times relevant to this action, Defendant promised Plaintiff Tucker and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Tucker and the Rule 23 Nationwide Class members performed on behalf of Defendant.

67.     Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff Tucker, has an hourly rate of approximately $11.40 per hour.

68.     Plaintiff Tucker and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out the work they performed.

69.     By not paying Plaintiff Tucker and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant was unjustly enriched.

70.     Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

71. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff Tucker and every other Rule 23 Nationwide Class Member and enjoyed the benefits derived therefrom.

72. Upon information and belief, Defendant used the monies owed to Plaintiff Tucker and every other Rule 23 Nationwide Class Member to finance their various business expenditures.

73. Defendant has been unjustly enriched by the retention of monies received pursuant to the sales and services Plaintiff and the Rule 23 Nationwide Class procured on behalf of Defendant, without having compensated Plaintiff for the same.

74. Plaintiff and the Rule 23 Nationwide Class suffered detriment as a result of Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

75. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class Member have suffered damages, including, but not limited to, loss of wages.

WHEREFORE, Plaintiff requests the following relief:

    a. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

    b. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with

respect to Plaintiff Tucker's unjust enrichment claim (Count II);

c. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members, Rule 23 Nationwide Class members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d. An Order designating the Plaintiff Tucker as representative of the FLSA Collective and the Rule 23 Nationwide Class; and undersigned counsel as Class counsel for the same;

e. An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f. An Order declaring Defendant's violations of the FLSA were willful;

g. An Order declaring Defendant unjustly enriched by failing to pay Plaintiff and the Rule 23 Nationwide Class for each hour they worked at a pre-established regularly hourly rate;

h. An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective, and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

i. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

j. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

k. An Order awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: January 9, 2018

Respectfully submitted,

*/s/ Charles R. Ash, IV*
Kevin J. Stoops (P64371)
Charles R. Ash, IV (P73877)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
248-355-0300
kstoops@sommerspc.com
crash@sommerspc.com

*Trial Counsel for Plaintiff*